**IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**

-----------------------------------------------------------------
**Case No. 15-3485**
-----------------------------------------------------------------

**STEPHEN BODNAR, Individually and
t/d/b/a STEPHEN BODNAR
MASONRY AND DANIELLE BERRY,
Individually and as Administratrix of the
Estate of JAMES BERRY**
*Appellants*

**vs.**

**NATIONWIDE MUTUAL INSURANCE
COMPANY and AMCO INSURANCE
COMPANY**
*Appellees*

-------------------------------------------------------------------------------------------------------------

**BRIEF OF APPELLANTS
STEPHEN BODNAR and DANIELLE BERRY**
*and*
**Appendix Volume I Pages 1-58**

-------------------------------------------------------------------------------------------------------------

**On Appeal from the United States District Court
for the Middle District of Pennsylvania
No. 3:12-1337**

> **MICHAEL R. MEY, ESQ.
> MEY & SULLA, LLP
> 1144 EAST DRINKER STREET
> DUNMORE, PA   18512
> 570-961-1929**
> *Attorneys for Appellants
> Bodnar and Berry*

# United States Court of Appeals for the Third Circuit

## Corporate Disclosure Statement and
## Statement of Financial Interest

No. _15-3485_

Bodnar and Berry

v.

Nationwide

### Instructions

Pursuant to Rule 26.1, Federal Rules of Appellate Procedure any nongovernmental corporate party to a proceeding before this Court must file a statement identifying all of its parent corporations and listing any publicly held company that owns 10% or more of the party's stock.

Third Circuit LAR 26.1(b) requires that every party to an appeal must identify on the Corporate Disclosure Statement required by Rule 26.1, Federal Rules of Appellate Procedure, every publicly owned corporation not a party to the appeal, if any, that has a financial interest in the outcome of the litigation and the nature of that interest. This information need be provided only if a party has something to report under that section of the LAR.

In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate shall provide a list identifying: 1) the debtor if not named in the caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is an active participant in the bankruptcy proceedings. If the debtor or the bankruptcy estate is not a party to the proceedings before this Court, the appellant must file this list. LAR 26.1(c).

The purpose of collecting the information in the Corporate Disclosure and Financial Interest Statements is to provide the judges with information about any conflicts of interest which would prevent them from hearing the case.

The completed Corporate Disclosure Statement and Statement of Financial Interest Form must, if required, be filed upon the filing of a motion, response, petition or answer in this Court, or upon the filing of the party's principal brief, whichever occurs first. A copy of the statement must also be included in the party's principal brief before the table of contents regardless of whether the statement has previously been filed. Rule 26.1(b) and (c), Federal Rules of Appellate Procedure.

If additional space is needed, please attach a new page.

(Page 1 of 2)

Pursuant to Rule 26.1 and Third Circuit LAR 26.1,  **Bodnar and Berry**
makes the following disclosure:

(Name of Party)

    1) For non-governmental corporate parties please list all parent corporations:   None

    2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock:

       None

    3) If there is a publicly held corporation which is not a party to the proceeding before this Court but which has as a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:

       None

    4) In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: 1) the debtor, if not identified in the case caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is active participant in the bankruptcy proceeding. If the debtor or trustee is not participating in the appeal, this information must be provided by appellant.

       N/A

(Signature of Counsel or Party)

Dated: _October 21, 2015_

rev: 09/2014        (Page 2 of 2)

# TABLE OF CONTENTS

*Page*

JURISDICTIONAL STATEMENT ................................................... 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ................................ 2

STATEMENT OF THE CASE.................................................... 3

STATEMENT OF FACTS ..................................................... 4

SUMMARY OF ARGUMENT ................................................... 8

STANDARD OF REVIEW .................................................... 14

ARGUMENT ............................................................. 16

**A.    The District Court erred as a matter of law by failing to consider all of the facts of record, and in a light most favorable to the non-moving party giving him every reasonable inference therefrom.** ...........................................................  16

**B.**

**The District Court erred in making a factual conclusion that Nationwide continued to investigate Berry's status throughout the claim and committed an error of law in concluding Nationwide had a duty to pursue an exclusion.** ...............................  27

**C.    The District Court erred in concluding Nationwide did not act in bad faith when the policy it sold had no definition of an exclusion and no reasonable method to define the exclusion.** ...  34

**D.    The District Court erred in making a factual conclusion that Nationwide did not act in bad faith by allowing and supervising a defense in the third party action which was adverse to Bodnar's interests.** ...........................................................  40

*Page*

**E.    The District Court erred in making a factual conclusion that Nationwide did not act in bad faith by it's unexplained and undocumented change from concluding Berry was a "temporary worker" to arguing he was an "employee."** .............. 45


CONCLUSION.............................................................................. 51

COMBINED CERTIFICATIONS.......................................................... 52

APPENDIX Volume I ...................................................................... 55

Page

# TABLE OF AUTHORITIES

## *Cases*

***Anderson v. Liberty Lobby, Inc.***,
  477 U.S. 242 (1986) .............................................................. *passim*
***Assaf v. Fields***,
  178 F.3d 170(3d Cir. 1999)...................................................... 14
***Barber v. Pittsburgh Corning Corp.***,
  521 Pa. 29, 35, 555 A.2d 766 (1989)........................................... 43
***Baxter v. Baxter***,
  423 F.3d 363, 368-69 (3d Cir. 2005).......................................7, 28
***Bracciale v. Nationwide Mut. Fire Ins. Co.***,
  1993 WL 323594, *6 (E.D. Pa. 1993).......................................... 24
***Brown v. Progressive Ins. Co.***,
  860 A.2d 493, (Pa. Super. Ct. 2004)........................................... 49
***Butterfield v.Giuntoli***,
 448 Pa.Super. 1, 670 A.2d 646 (1995)........................................... 21
  ***Chipollini v. Spencer Gifts, Inc.***,
    814 F.2d 893 (3d Cir. 1987)..................................................... 14
***Cloverland-Green Spring Dairies, Inc. v. Pa. Milk Mktg. Bd.***,
  298 F.3d 201, 210 (3d Cir. 2002)............................................... 17
***Cowden vv. Aetna Cas. & Sur. Co.***,
  134 A.2d 223 (Pa. 1957). ..................................................... 19
***Coyne v. Allstate Ins. Co.***,
  771 F. Supp. 673 (E.D. Pa. 1991).............................................. 50
***Fakete v. Aetna, Inc.***,
  308 F.3d 335, 337 (3d Cir. 2002)............................................... 17
  ***Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.***,
  193 F.3d 742 (3d Cir. 1999)................................................... 50
***Galko v. Harleysville Pennland Ins. Co.***,
  71 Pa. D. & C.4th 236 (Pa. Com. P1. 2005*)*............................... 38
***Geisinger Clinic v. Di Cuccio***,
  414 Pa.Super. 85, 606 A.2d 509 (Pa.Super.Ct.1992).......................... 38, 39
***Grossi v. Travelers Personal Ins. Co.***,

79 A.3d 1141 (Pa. Super. 2013)..................................................... 16
*Hill v. City of Scranton*,
    411 F.3d 118 (3rd Cir. 2005).................................................. 14
*Hollock v. Erie Ins. Exch.*,
    878 A.2d 864 (Pa. 2005)....................................................... 38
*Hollock v. Erie Ins. Exch.*,
    842 A.2d 409 (Pa.Super 2004)........................................... 38, 44
*Hollock v. Erie Ins. Exch.*,
    54 Pa. D. & C. 4th 449 (Pa. Com. Pl. 2004).............................. 50
*Kelly v. Borough of Carlisle*,
    622 F.3d 248 (3d Cir. 2010).................................................. 16
*Marino v. Indus. Crafting Co.*,
    358 F.3d 241 (3d Cir. 2004)................................................. 17
*Mistick, Inc. v. Northwestern Nat. Cas. Co.*,
    806 A.2d 39 (Pa.Super.2002)................................................ 21
*Miller v. Boston Ins. Co.*,
    420 Pa. 566, 218 A.2d 275(Pa.1966)...................................... 21
*Mohney v. American Gen. Life Ins. Co.*,
    116 A.3d 1123, 2015 PA Super 113 (Pa. Super. 2015)............... 36
*Natale v. Camden Cnty. Corr. Facility*,
    318 F.3d 575 (3d Cir. 2003)................................................. 17
*Pennsylvania Coal Association v.Babbitt*,
    63 F.3d 231 (3rd Cir 1995)................................................. 17
*Polselli v. Nationwide Mut. Fire Ins. Co.*,
    23 F.3d 747 (3d Cir. 1994).................................................. 19
*Rancosky v. Washington National Insurance Co.*,
    2015 PA Super 264, 1282 WDA 2014................................... 24
*Reeves v. Sanderson Plumbing Prods., Inc.*,
    530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)............. 14, 15
*Romano v. Nationwide Mutual Fire Ins. Co.*,
    435 Pa. Super. 545, 646 A.2d 1228 (1994).............................. 36
*Selko v. Home Ins. Co.*,
    139 F.3d 146 (3d Cir.1998)................................................. 21
*Standard Venetian Blind v. Am. Empire Ins. Co.*,
    503 Pa. 300, 469 A.2d 563 (1983)......................................... 21
*Terletsky v. Prudential Prop. and Cas. Ins. Co.*,

437 Pa. Super. 108, 649 A.2d 680 (1994)............................................. 16, 38
*United States v. 6.45 Acres of Land*,
    409 F.3d 139 (3d Cir. 2005).................................................. 16, 28
*United States v. Hull*,
    456 F.3d 133, 137 (3d Cir. 2006)............................................. 28

**Statutes**

28 U.S.C. §§ 1291, 1332, 1441, and 1446
Fed.R.Civ.P. 56(c)........................................................................ 14
42 Pa.C.S.A §8371.................................................................. 16, 51
40 P.S. § 1171....................................................................... 36, 38

**APPENDIX    Volume I**

NOTICE OF APPEAL                                                    1

ORDER GRANTING SUMMARY JUDGMENT                                     3

OPINION GRANTING SUMMARY JUDGMENT                                   4

ORDER DENYING RECONSIDERATION                                       41

OPINION DENYING RECONSIDERATION                                     42

**APPENDIX    Volume II**

BODNAR'S ANSWER TO DEFENDANT'S CONCISE
STATEMENT OF MATERIAL FACTS.......................................... 59

BODNAR'S ANSWER TO DEFENDANT'S 3RD
MOTION FOR SUMMARY JUDGMENT
NATIONWIDE'S 3RD MOTION FOR SUMMARY JUDGMENT................ 222

NATIONWIDE'S CONCISE STATEMENT OF MATERIAL FACTS......... 225

BODNAR AMENDED RESPONSE TO AMENDED MOTION
FOR SUMMARY JUDGMENT...................................................... 379

BODNAR  RESPONSE TO AMENDED MOTION
FOR SUMMARY JUDGMENT...................................................... 620

BODNAR RESPONSE TO NATIONWIDE'S
STATEMENT OF PROPOSED UNDISPUTED FACTS............................... 662

NATIONWIDE'S AMENDED MOTION FOR SUMMARY JUDGMENT.. 692

STATEMENT OF PROPOSED UNDISPUTED MATERIAL FACTS......... 795

## APPENDIX    Volume III

NATIONWIDE DEFINITION OF TEMPORARY WORKER....................... 816

NATIONWIDE TRAINING MATERIALS.................................................. 817

## STATEMENT OF SUBJECT-MATTER
## AND APPELLATE JURISDICTION

The United States District Court for the Middle District of Pennsylvania had
jurisdiction over this matter under 28 U.S.C. §§ 1332, 1441, and 1446. This Court
has jurisdiction under 28 U.S.C. § 1291. The District Court entered judgment on
September 15, 2015. (*See* Docket No.185 ; Appendix ("A-3") )

Defendant filed a timely notice of appeal on October 13, 2015. (*See* Docket No. 190;
A -1 (Notice of Appeal).) This appeal is from a final judgment disposing of all claims.

## STATEMENT OF ISSUES

A.     Wether the District Court erred as a matter of law by failing to consider all of the facts of record, and in a light most favorable to the non-moving party giving him every reasonable inference therefrom.

B.      Wether the District Court erred in making a factual conclusion that Nationwide continued to investigate Berry's status throughout the claim and committed an error of law in concluding Nationwide had a duty to pursue an exclusion.

C.      Wether the District Court erred in concluding Nationwide did not act in bad faith when the policy it sold had no definition of an exclusion and no reasonable method to define the exclusion.

D.     Wether the District Court erred in making a factual conclusion that Nationwide did not act in bad faith by allowing and supervising a defense in the third party action which was adverse to Bodnar's interests.

E.     Wether the District Court erred in making a factual conclusion that Nationwide did not act in bad faith by it's unexplained and undocumented change from concluding Berry was a "temporary worker" to arguing he was an "employee"

## STATEMENT OF THE CASE

**PROCEDURAL HISTORY**

Plaintiff commenced this matter with the filing of a complaint on June 5, 2012 in the Court of Common Pleas of Luzerne County. Defendant removed this matter to federal court on July 10, 2012 and filed a Motion to Dismiss on July 16, 2012.  On January 10, 2013, Plaintiff filed an Amended Complaint (hereinafter referred to as "the Complaint") addressing the subject matter of the Motion to Dismiss. On January 25, 2013, Defendant filed an Answer with Affirmative Defenses.

Nationwide's first Motion for Summary Judgment was filed March 14, 2013 and denied by this Court's Order of May 16, 2013.  Nationwide filed an Amended Motion for Summary Judgment June 30, 2014.   On July 16, 2014 Magistrate Judge Thomas M. Blewitt ordered the parties to submit briefs on disputed discovery; Nationwide responded July 16, 2014.  Plaintiffs was filed July 18, 2014.  Neither of the issues raised by Plaintiffs were ever ruled upon by Judge Blewitt.  On January 13, 2015, Nationwide filed its Third Motion for Summary Judgment which was granted by this Court's Order of September 15, 2015.  Appellant moved for Reconsideration which was denied by the Court on December 3, 2015.

## STATEMENT OF
## RELATED CASES AND PROCEEDINGS

None

## STATEMENT OF FACTS

On April 29, 2010, James Berry, a 35 year old Father of a two (2) year old Daughter and Husband of  Danielle E. Berry, was trapped in an earthen ditch on property owned by Stephen Bodnar for a project being developed by the Bodnarosa Campground resulting in his death from mechanical asphyxiation when the ditch and excavated earth piled beside it collapsed.  Prior to instituting suit, Berry's Estate provided Nationwide with tax returns and wage statements showing that the decedent's anticipated loss of wages were in excess of $1,7000,00.00, and that the total value of the claim would exceed $3,000,000.00.  Nationwide has never disputed these valuations or the Estate's claim for punitive damages based upon five OSHA citations issued for improper or non-existent safety measures.  [A-82]  A lawsuit was filed on behalf of the Estate of James Berry against Bodnar.  On August 19, 2011, Defendant filed a second Declaratory Judgment action in the Court of Common Pleas of Luzerne County to Docket No. 2011-10062 which was not discontinued until February 15, 2013.

Nationwide's request for relief in the Declaratory Judgement Action states:

**"AMCO has no duty to defend and/or indemnify Stephen Bodnar, individually and t/d/b/a Stephen Bodnar Masonry because James Berry was an employee *as defined under the AMCO policy*."**

4

**[A- 84]**

**No such definition is contained in the policy.**

Prior to any litigation, Bodnar and his private counsel, Franklin E. Kepner, Jr., participated in an interview with Nationwide's adjuster, Lambercht, October 25, 2010, in which Bodnar told Lambercht unequivocally that Berry was not his employee at the time of his death.  **[A - 183 (Doc. 173-4)   NW-BOD 46-47]**.

Beginning in August 2010, after Nationwide had assigned Rick Lambercht as an adjuster for the wrongful death and survival claim brought by Berry, counsel for Berry supplied various documents under his letters of September 14, 2010 and October 19, 2010, including tax returns, police reports, business checks and mortgage applications.  **[A - 183 (Doc. 173-4) NW-BOD 47]**.  The claim log and Lambercht's deposition testimony shows nothing was done with this information.  **[A - 183 (Doc. 173-4) NW-BOD 1-82]**.  From the outset, Nationwide's focus was on whether Berry could be classified as an employee under the terms under the policy it authored which would exclude coverage for his death.  It is important to note that the policy does not define "employee", but rather attempts to do so by exclusion by stating that an employee is neither a "temporary worker" nor a "leased worker."  **[ A- 280 ]**Plaintiffs deposed Nationwide's 30(b)(6) designee, Joseph Bottger, together with the adjusters responsible for the third party claim,

Lance Jamison, and the declaratory judgment action, Rick Lambercht.

Nationwide is bound by its designee's testimony on several critical issues previously undisclosed in discovery including Nationwide's corporate philosophy to adjust the issue of coverage on an admittedly undefined and ambiguous term "employee:"

> **"Nationwide doesn't have its own definition of what an employee is.  We rely on the case law in the state and we apply that to the policy as best we can."**
> **[A -524 Designee Deposition lines: 12-18].**
>
> **"Nationwide does not have an independent definition of employee."**
>
> **[A - 532 Designee Deposition lines: 20-21].**

What is truly beyond the pale is that Nationwide, through Bottger's supervision of Lambercht and Jamison, gathered virtually no information to support its contention that Berry was an employee.  **[A - 120  Lambercht, adjuster, lines:13-22]** and **[A -131  Jamison, adjuster, lines:1-10]** .

Worse still, Nationwide deliberately turned a blind eye to information that supported Bodnar's request for coverage:

● Bodnar's unequivocal and uncontradicted statement to Lambercht on October 25, 2010 that he believed Berry to be an employee

6

**[A - 183 Claim Log 48-47]**;

- The exclusive documentary evidence contained in Nationwide's claims file supported Bodnar's position **[A - 183 Claim Log, NW-BOD 48-47]**;

- The absence of any verified evidence supporting Nationwide's conclusion that Berry was an employee **[A - 532 Designee Deposition lines: 14-21]**;

- Bodnar had filed a verified answer to the action filed against the Campground corporate entity, Bodnarosa, LLC in which he swore to the Court that Berry was an independent contractor

**[A - 183 Claim Log , NW-BOD 28-29]**;

Counsel for Berry challenged Nationwide to provide any type of information concerning Berry's employment status; Nationwide never did. However, on December 8, 2010, Lambercht authored a letter stating they had a "good faith basis" for "arguing" that Berry could be an employee.  Claims notes later revealed that Nationwide conducted virtually no investigation and in fact, did not even analyze the information supplied by Berry's counsel. Lambercht admitted in his deposition virtually nothing was done in the Declaratory action to support the exclusion Nationwide sought to enforce.  **[A - 120 , Lambercht, adjuster, lines:13-22]**  Nationwide's Motion for Summary Judgment claimed there is no evidence of breach of contract or bad faith claims handling demonstrated by the

"discovery of record."  Plaintiffs  filed a detailed response to Nationwide's

"Statement of Facts" which clearly and convincingly demonstrates that there are

numerous material facts which are unresolved and if accepted by the jury as true,

would more than suffice to establish both of Plaintiffs' claims for relief. **[ A - 59-
86]**


## SUMMARY OF ARGUMENT

Nationwide breached the contract by failing to conduct a good faith and unbiased

investigation; instead it began with mind-set of denial prior to ANY investigation less

than five days after receiving the claim on August 19, 2010 as shown by its claim

note that same day.**[A - 194]**

The facts, taken directly from Nationwide's claims file or the testimony of its

two claims handlers and designee were in essence dismissed by the Court as either

unworthy of consideration or not evidence of bad faith.   It appears that the Court,

rather than recognizing these as facts appropriate for a jury's consideration, undertook

the impermissible role of making conclusions and drawing unsupported inferences

from these facts, both of which are prohibited in evaluating a Motion for Summary

Judgment and as such constitute a clear error of law.  Further,  the conclusory

evaluation undertaken by the Court in dismissing or ignoring these facts is a further

misapprehension of those facts which usurps the fact finding role of the jury.

Moreover, despite Nationwide's representations to this Court that it relied upon the existence of a Worker Compensation Claim and an OSHA Investigation, it NEVER obtained the Worker Compensation file and NEVER had the OSHA file in the Declaratory Judgment Action. Clearly, the workers' compensation file would have demonstrated that no application for benefits had been made by the Berry Estate, none had been submitted by Bodnar Masonry and that the claim had been denied. This is yet another example of Nationwide on the one hand representing to this Court that is was acting reasonably by relying upon the existence of a workers' compensation claim, and on the other hand purposefully, intentionally and deliberately not availing itself of information which would be contrary to its stated and maintained purpose of establishing the employee exclusion.

As of October 2010, Nationwide concluded that it needed no further information to make its decision to deny coverage and requested no additional information from Berry's Estate by failing to pursue any investigation or develop any facts or information in pursuit of an ill-advised declaratory judgment action as admitted by its adjuster, Rich Lambercht.

Lambercht admitted he did no further investigation and developed no additional information. Jamison did likewise. Bottger could point to no information that was developed during almost two years of litigation.

The Court's conclusion of a continuing investigation by Nationwide should be

reconsidered since this is both a clear error in the application of the summary judgment standard, and an error of fact unsupported by the record but instead an impermissible conclusion by the Court of the reasonableness of the investigation conducted by Nationwide which is a matter of a material factual dispute and thus appropriate for a jury's consideration.  On this point, Plaintiffs cannot stress strongly enough that any view of Nationwide's investigation as reasonable, fairminded or objective simply is not supported by the facts of record including the claim log and the deposition testimony of Jamison, Lambercht and Bottger.

Again the record before the Court clearly demonstrates that the initial claims note of searching for an exclusion was a directive followed by the two claims handlers Jamison and Lambercht and acknowledged by Nationwide through the admission of its designee as its intended course of action throughout the claim. Again, each of these witnesses employed by Nationwide had admitted they developed no information and conducted no investigation during their tenure.    Clearly the Court's conclusion in this regard is not only unsupported by the record but a direct contradiction to the well known standard of construing every reasonable inference in favor of the Plaintiffs.    Here, it seems clear to the contrary:    Not only is an assumption made in Nationwide's favor unsupported by the record, but all inferences were drawn in Nationwide's favor and against the Plaintiffs.  This clear error of law and fact would justify this Courts reconsideration of Nationwide's true obligation in

this matter to search coverage as admitted by its designee. Further, the Court apparently concludes that Nationwide's "duty" was to determine the exclusion. On the contrary, while this burden is placed upon an insurer it is certainly not its duty to establish an exclusion since this would be contrary to the Unfair Insurance Practices Act requiring an insurance company to fully explore all possible avenues of coverage, important policy parts and benefits.

Despite its burden of establishing that the exclusions apply, Nationwide fails to identify uncontradicted facts in the record which establish that either exclusion applies.

First, with respect to the "investigation" conducted by Nationwide, it is clear that it is both woefully inadequate and certainly not fairminded or objective, and most certainly not, if the Court were in fact to view Nationwide's conduct in a light most favorable to the Plaintiffs giving the Plaintiffs every reasonable inference of the facts set forth by Plaintiffs in their Responses to Statement of Material Facts. **[A -59-86 and A-662- 689]** Secondly, the Court commits a clear error of law with respect to the burden of proof on the application of an exclusion in an insurance policy. Clearly it is Nationwide's and certainly its obligation to establish the exclusions applicability by uncontradicted facts in the record. Here, as demonstrated by the uncontradicted testimony of Jamison, Lambrecht and Bottger, there are no uncontradicted facts which supports the exclusion. On the contrary, the facts of record, viewed in a light

11

more favoring the Plaintiffs and giving them the every reasonable inference thereof, provides ample evidence of inadequate facts to support the exclusion, and an overwhelming number of facts completely ignored by Nationwide contrary to the exclusion.

Further, the Court in granting Defendant's Motion for Summary Judgment erroneously permitted Defendant to argue for its benefit the advice of its in-house counsel, Cheryl Kovaly **[A -31]** , despite the fact that the Defendant had consistently represented to the Court and Plaintiffs' counsel that it would not rely upon the advice of counsel defense.

During oral argument, requested by Plaintiff, on this Motion, counsel for Nationwide stated unequivocally that it knew the effect of raising the privilege and the prohibition against any attempted use of this advice as a defense.

It is obvious from the Court's conclusion in its opinion concerning Kovaly's participation, and Plaintiffs' failure to compel disclosure of Kovaly's advice form the basis of the Court drawing a factual inference that the advice "only lead to a determination to file a declaratory judgment action, not to deny coverage."

This conclusion is erroneous on two grounds:    First, it is completely unsupported by the record by the Court and, secondly, is a clear violation of the Court's obligation to view the facts in the light most favorable to the Plaintiff and to

12

draw all reasonable inferences from those facts in Plaintiffs' favor by instead impermissibly engaging in improper weighing of the evidence and making a conclusion for which there is no support.

The Court had clearly misapprehended a clear fact of record:   Not only did Plaintiff move for disclosure of the Kovaly file, but this Court affirmatively ruled upon it prohibiting its production unless Nationwide called into question its advice of counsel.   Again,  it appears that the Court is giving great deference, making a conclusion in its favor and drawing all reasonable inferences in support of Nationwide's impermissible argument of pointing toward Kovaly's advice as an explanation for its change in direction and conclusion between November 4th and November 8th, 2010.  The Court clearly misapprehended the fact that there is no other explanation contained in the claim file for this change.  Further, the Court makes a conclusion unsupported by the record by inferring that the only advice that Kovaly might have given would be to file a Declaratory Judgment action.  The simple truth of the matter is that the importance of this turn of events is that Nationwide's own claims file clearly and convincingly establishes that it has no basis,  let alone a reasonable basis for making a conclusion that it could argue that Berry was an employee.  An insurance company arguing, in the absence of un-controverted facts that an exclusion should be applied is certainly a fact upon which  a reasonable jury

13

could find bad faith.

## STANDARD AND SCOPE OF REVIEW

"We exercise plenary review over the District Court's order granting summary judgment..." *Assaf v. Fields*, 178 F.3d 170, 171 (3d Cir. 1999). "Accordingly, we apply the same test that the District Court should have applied." *Chipollini v. Spencer Gifts, Inc*., 814 F.2d 893, 896 (3d Cir. 1987) (en banc). "We review the record as a whole, 'draw[ing] all reasonable inferences in favor of the non-moving party' but not weighing the evidence or making credibility determinations. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (citation omitted). If we determine that 'there is no genuine issue as to any material fact' and that the movant is entitled to judgment as a matter of law, we will affirm the district court's grant of summary judgment. Fed.R.Civ.P. 56(c)."

*Hill v. City of Scranton*, 411 F.3d 118 (3rd Cir. 2005)

### Summary Judgment Standard

"At the summary judgment stage, the trial judge's function is not himself to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. [T]he judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Id*. at 252, 106

14

S.Ct. 2505. We must not engage in the making of " [c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts" as these " are jury functions, not those of a judge, [when] he is ruling on a motion for summary judgment." Id. at 254, 106 S.Ct. 2505."

***Anderson v. Liberty Lobby, Inc.,*** 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202, 54 U.S.L.W. 4755 (1986).

"[A]lthough the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." ***Reeves v. Sanderson Plumbing Products, Inc.,*** 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105, 68 U.S.L.W. 4480 (2000)**.**

15

# **ARGUMENT**

## **Definition of Bad Faith Under 42 Pa.C.S.A §8371**

"To recover under a claim of bad faith, the plaintiff must show that the defendant did not have a reasonable basis for denying benefits under the policy and that defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim." *Terletsky v. Prudential Prop. and Cas. Ins. Co.*, 437 Pa.Super. 108, 649 A.2d 680, 688 (1994). To sustain a claim under *§ 8371*, a plaintiff must prove bad faith "by clear and convincing evidence." *Terletsky,* 649 A.2d at 688.

An action for bad faith may extend to the insurer's investigative practices. Bad faith conduct also includes lack of good faith investigation into facts, and failure to communicate with the claimant. . . . Bad faith claims are fact specific and depend on the conduct of the insurer vis á vis the insured. *Grossi v. Travelers Personal Ins. Co.*, 79 A.3d 1141, 1148-1149 (Pa. Super. 2013)

> **A.  The District Court erred as a matter of law by failing to consider all of the facts of record, and in a light most favorable to the non-moving party giving him every reasonable inference therefrom.**

1.  The District Court's application of the summary judgment standard receives plenary review, whereas the District Court's findings of fact are reviewed for clear error. *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010) *See United*

16

*States v. 6.45 Acres of Land*, 409 F.3d 139, 145 (3d Cir. 2005).

"In considering an order entered on a motion for summary judgment, 'we view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion.' *Babbitt*, 63 F.3d at 236. As we also have explained, '[a] factual dispute is material if it bears on an essential element of the plaintiff's claim, and is genuine if a reasonable jury could find in favor of the nonmoving party.'" *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 580 (3d Cir. 2003) (citing *Fakete v. Aetna, Inc.*, 308 F.3d 335, 337 (3d Cir. 2002) (in turn quoting *Cloverland-Green Spring Dairies, Inc. v. Pa. Milk Mktg. Bd.*, 298 F.3d 201, 210 (3d Cir. 2002))).

A finding of fact that is wholly lacking in evidentiary support is clearly erroneous and should be overturned. *See, e.g., Baxter v. Baxter*, 423 F.3d 363, 368-69 (3d Cir. 2005) (setting aside factual finding as clearly erroneous because it was unsupported by record).

2.  The District Court erred as a matter of law by weighing evidence and making credibility determinations. Courts may not "make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed[,] and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crafting Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*

17

***v. Liberty Lobby, Inc.***, 477 U.S. 242, 255 (1986)).

    a.    PREDISPOSITION OF DENIAL

Nationwide's predisposition toward denial and continued refusal to accept contrary evidence are factual issues which a reasonable jury would consider bad faith.

The District Court's conclusion that Nationwide did not begin and maintain a predisposition of denial violates the summary judgement standard by impermissibly weighing evidence, making credibility determinations and is contradicted by the facts of record.

In response to Bodnar's factual assertion **[A - 62 (Doc. 173) ]** that Nationwide began this claim with a mind set of denial the Court wrote:

> "Plaintiffs premise much of their arguments on the belief that Nationwide began and conducted its investigation "with a predisposition toward denial" (See Doc. 172 at 22.)

> Thus, Plaintiffs argue:

>> In fact Nationwide's very first few claims notes show it's only view toward Berry was as an "employee." Nationwide has admitted it had no documentary evidence from its insured to support such a conclusion. It has admitted that it never had the workers [sic] compensation file it now seeks to rely upon. It took no statements from any witnesses. It gathered no documents itself. When it received documents disproving its conclusion that Berry was an employee it simply ignored them. (Id.)

>> **<u>The Court cannot agree with this interpretation of the claim file.</u>**

(Emphasis added) **[A - 28 (Doc. 184)]**

This last conclusion by the court is not only the erroneous product of weighing conflicting evidence, is not supported by the facts of record but is instead contradicted by those facts including the following log entry made prior to ANY investigation less than five days after receiving the claim on August 19, 2010 :

> **8-24-10  We need to confirm that the decedent does indeed meet the definition of an employee. WC should be the sole remedy, but the estate's atty  will likely try to get around this by proving that the decedent was no (sic) an employee, or that the PH has an individual exposure aside from his role as a masonry contractor.**
>
> **Impact: Once I receive other documents from NI's personal counsel, we should be able to issue a liability disclaimer under the CG-000 I(12/07), Exclusion 2-e, Employer's Liability.**
>
> **[A- 195 Nationwide's Claims Log, NW-BOD 58].**
>
> This is a clear admission of Nationwide's breach of its duty of good faith by failing to "accord the interest of its insured the same faithful consideration it gives its own interest." *Polselli v. Nationwide Mut. Fire Ins. Co.,* 23 F.3d 747,C.A.3 (Pa.),1994. citing *Cowden,* 134 A.2d at 228.

 The Court's error is made manifest in its conclusion that the claim file did not support Bodnar's contention that Nationwide began and conducted its investigation with a predisposition toward denial.  The District Court's conclusion in this regard necessitated the weighing of evidence and drawing factual conclusions from the

record before it as clearly demonstrated by the Court's conclusion "while initial entries to refer to Berry as 'employee,' there is no suggestion in the record that this was meant to be a binding characterization instead of a mere term of convenience." **[A-28]** In reaching this conclusion, the District Court ignored the very first claims note by Nationwide's designee, Bottger:**[A- 195 Nationwide's Claims Log, NW-BOD 58].**

This directive issued by Bottger to the claims handler, Jamison, who testified that the direction to him [the initial claim note] seemed to be one to search for an exclusion as opposed to searching for coverage **[A -128 Jamison adjuster page lines: 11-18]**.:

11     **Q. Does that look like he's searching for an**

12     **exclusion, or is he searching for coverage?**

13     **MR. KASTER: Objection. Calls for**

14     **the witness's opinion.**

15     **You may answer.**

16     **THE WITNESS: As it's stated there,**

17     **it would look as though he's looking for an**

18     **exclusion.**

Nationwide has admitted by the testimony of it's designee, Bottger, that it had a duty to search for coverage, which is consistent with an insurer's duties under Pennsylvania's Unfair Claim Settlement Practices Act. § 146.4. (a):

17  Q.  **Do you agree that Nationwide is under a duty**

18  **to search for coverage within the terms of its policy?**

19     A.  **Yeah -- I guess the way to answer that would**

20  **be yes, we search for coverage, but, again, it's based**

21  **upon the facts as they pertain to case law and it's**

22  **kind of a tough statement to make in general, but yes.**

**[A - 107, Bottger, designee, lines:17-22)]**.

An insurance company has the burden of establishing those facts necessary to establish an exclusion upon which it wishes to rely. *Mistick, Inc. v. Northwestern Nat. Cas. Co.,* 806 A.2d 39, 42 (Pa.Super.2002). The insurer can sustain its burden only by establishing the exclusion's applicability by uncontradicted facts in the record. *See Butterfield,* 670 A.2d at 651-52; *Miller v. Boston Ins. Co.,* 420 Pa. 566, 218 A.2d 275, 277 (Pa.1966). Policy exclusions are strictly construed against the insurer. *Selko v. Home Ins. Co.,* 139 F.3d 146, 152 n. 3 (3d Cir.1998) (citing *Standard Venetian Blind,* 469 A.2d at 566).

The District Court compounded its error by ignoring the further testimony of Jamison that this instruction, to search for an exclusion, did not change between the time the claim opened throughout his tenure as a third party adjuster **[A-129 - 130, Jamison adjuster 69: 23-24, 70: 3-4]**. Jamison, likewise testified that he was not

21

searching for coverage for Nationwide's insured:

**21    Q. During the time that you had this, between**

**22    March of 2011 and the end of the log that I have,**

**23    January of 2012, can you point to any portion of that**

**24    log where you're searching for coverage for Mr. Bodnar?**

**1    A. No.**

**[A -132-133, Jamison, adjuster,  pages 77:21-24, 78:1].**

The adjuster's attitude in this regard is not surprising given the attitude of his supervisor, Bottger, who testified :

**11   Q.   Because at that point Nationwide in November**

**12   of 2010 said we have a reasonable basis to argue that**

**13   the employee exclusion applies?**

**14     A.   That's pretty much what we were saying all**

**15   along.**

**[A - 534, Bottger Designee, lines 11-15]**

Jamison further testified this instruction did not change between the time the claim opened until he began to adjust the file:

**24    Q. Do you know whether that direction in anyway**

**25    changed between August of 2010 and March of 2011?**

**3    I don't know that it**

4    **changed.**

**[A-129 - 130, Jamison adjuster 69: 23-24, 70: 3-4]**

Although the Court acknowledges this potential bad-faith conduct, rather than viewing this fact in a light most favorable to Bodnar, it does just the opposite by stating:

> While initial entries do refer to Berry as an "employee," there is no suggestion in the record that this was meant to be a binding characterization, instead of a mere term of convenience.
>
> This could be the case if Nationwide arbitrarily decided to call Berry an "employee" and refused to accept contrary evidence. However, the claim file does not indicate that any such course of conduct occurred.
>
> **[A - 28 (Doc. 184)]**

This factual conclusion is unsupported by the claim file **[A -138-219 ]**which shows the *only* characterization of Berry was as a "paid employee", nothing else, and without consideration of any other status.  Nationwide breached the contract by failing to conduct a good faith and unbiased investigation; instead it began with mind-set of denial prior to ANY investigation less than five days after receiving the claim on August 19, 2010.

**Standard for a Good Faith Insurance Investigation**

"When an insurer is presented with conflicting facts that are material to the issue of coverage, the insurer may not merely select or, as here, passively "accept, " a singular

disputed fact, which provides the insurer with a basis to deny coverage. Rather, the insurer must actively undertake a meaningful investigation to obtain accurate information bearing upon the coverage inquiry." ***Rancosky v. Washington National Insurance Co.***, 2015 PA Super 264, 1282 WDA 2014. ***Bracciale v. Nationwide Mut. Fire Ins. Co.***, 1993 WL 323594, *6 (E.D. Pa. 1993) (citations omitted). (concluding that insurer acted in bad faith by focusing only on allegations of intentional conduct and dismissing allegations of negligent acts).

**What the record before the Court actually shows is in fact that Nationwide turned a blind eye toward objective evidence contrary to its conclusion:**

On November 8, 2010, when it decided to deny coverage, the only documentary evidence contained in Nationwide's claims file showed that:

1. James Berry had been paid cash and that any checks issued by Bodnar Masonry were done so after his death;

2. Berry's tax returns showed no work for Bodnar Masonry;

3. Bodnar Masonry had no employment documents;

4. Mortgage applications made by Berry just prior to his death did not list Bodnar as his employer. **[A- 183 Nationwide's Claims Log, NW-BOD 46].**

5. Berwick Hospital records showing a previous injury with Bodnar not submitted to Workers Compensation:

24

5   Q.   I would like to you take a look at Exhibit

6   number 19.  I will represent to you that Exhibit number

7   19 is the emergency room receipt from Berwick Hospital

8   for a date of service for James Berry of March 20th,

9   2010.

10      A.   All right.

11      Q.   Have you seen the document before?

12      A.   Yes, I believe I have.

13      Q.   Okay.  Were you aware that Mr. Berry had been

14   hurt doing work with Stephen Bodnar?

15      A.   From a review of this or just in general?

16      Q.   Just in general?

17      A.   Just in general, yes.

18      Q.   Not the fatality but before that he had been

19   hurt?

20      A.   No, I was not.

21      Q.   The reason I ask is you can see that the

22   Bates stamps show both the declaratory judgment action

23   and the bad faith action that we are here for today.

24           If it was true that Mr. Berry had been hurt

                          209

1   while working with Stephen Bodnar on the Bodnarosa

2   project, and he went to the emergency room, and his

3   private health care insurance paid for it, would that

4   have been an important factor for you to know about it?

5      A.   Yeah, it would have been another factor that

6  **we would have taken a look at.**

7    **Q.  Can you tell me whether or not any of this**

8  **information is contained in the claims file that**

9  **Nationwide has?**

10    **A.  I have seen this document so I am sure it's**

11  **in our file.**

12    **Q.  After it got stuck in your file, what did**

13  **Nationwide do with it?**

14    **A.  I don't know specifically what was done with**

15  **this.  I don't recall.**

**[A - 589-590, Bottger Designee]**

The fact is there is nothing is in Nationwide's claim file on these  issues and, therefore, no factual basis for the District Court's conclusion that Nationwide conducted an open-minded investigation.

Moreover, despite Nationwide's representations to this Court that it relied upon the existence of a Worker Compensation Claim and an OSHA Investigation, it NEVER obtained the Worker Compensation file and NEVER had  the OSHA file in the Declaratory Judgement Action. **[see pgs.  16-19*Infra*]**

In it's Opinion, the Court not only fails to give Plaintiffs as the non-moving party every reasonable inference of the facts admitted by Nationwide's designee, and weigh them in their favor, but instead makes conclusions, credibility determinations

and draws inferences which are the sole province of the jury and necessitate their presentation to the jury for their resolution. ***Anderson v. Liberty Lobby, supra.***

Clearly, possession of the workers' compensation file at the time Nationwide denied coverage would have demonstrated that no application for benefits had been made by the Berry Estate, none had been submitted by Bodnar Masonry and that the claim had been denied.   This is yet another example of Nationwide on the one hand representing to this Court that is was acting reasonably by relying upon the existence of a workers' compensation claim, and on the other hand purposefully, intentionally and deliberately not availing itself of information which would be contrary to its stated and maintained purpose of establishing the employee exclusion.

Therefore, appellant Bodnar adduced the above facts, which a reasonable juror could believe and serve as a basis to find Nationwide acted in bad faith by beginning and maintaining an investigation evidencing a mind set of denial and who refused to reconsider it's position when confronted with contrary evidence, The District Courts grant of summary judgment should, accordingly, be reversed and the case remanded for a jury's consideration.

**(B)   The District Court erred in making a factual conclusion that Nationwide continued to investigate Berry's status throughout the claim and committed an error of law in concluding Nationwide had a duty to**

27

**pursue an exclusion. [A - 29 (Doc. 184)]**

The District Court's findings of fact, however, are reviewed for clear error. *See United States v. 6.45 Acres of Land*, 409 F.3d 139, 145 (3d Cir. 2005). A finding of fact that is wholly lacking in evidentiary support is clearly erroneous and should be overturned. *See, e.g., **Baxter v. Baxter***, 423 F.3d 363, 368-69 (3d Cir. 2005) (setting aside factual finding as clearly erroneous because it was unsupported by record). This Court exercises plenary review over conclusions of law. See,e.g., ***United States v. Hull***, 456 F.3d 133, 137 (3d Cir. 2006).

In response to Bodnar's factual assertion that Nationwide failed to conduct an even-handed objective investigation and instead focused on admitted inaccurate self serving specious statements the Court found:

> It [the claim file] demonstrates that Nationwide continued to investigate the claim, to consult with attorneys, and to attempt determine whether Berry was in fact an employee or a temporary worker, as evidenced in the entries of November 2010 in which, notwithstanding its initial characterizations, Berry's status is still a subject of uncertainty.
> Moreover, Plaintiffs' insinuation that Nationwide merely attempted to Berry into the "employee" category without adequate investigation bespeaks a distortion of the insurer insured relationship ...it **is therefore Nationwide's duty to discover whether Berry's death was in fact  an excluded occurrence**.  **[A - 28 (Doc. 184)]** (Emphasis added).

A finding of fact that is wholly lacking in evidentiary support is clearly erroneous and should be overturned.  ***Baxter, supra.***

The above factual conclusion is directly contradicted by the factual record presented to the Court which clearly showed Nationwide conducted no further investigation after the December 10, 2010 denial, to pursue any investigation or develop any facts or information in pursuit of an ill-advised declaratory judgment action as admitted by its adjuster, Rich Lambercht:

**8   Q.  Sure.  Taking into consideration the fact that**

**9   the focus is to be whether or not the coverage applies**

**10   to James Berry's death, to see whether he is included or**

**11   excluded from coverage, what information was developed**

**12   during those two years that you got into the file and**

**13   you memorialized in the file? (83)**

**20   Q.  Well, again, I'd invite you to find anything else**

**21   other than the materials that I provided to you in**

**22   connection with that investigation.  Anything else?**

**23   A.  No.   [A -119, Lambercht, adjuster, pages 84:8-13 84:20-23].**

**13   Q.  I want you to tell the Court what information**

**14   Nationwide developed between December of 2010 and**

**15   January of 2012 that assisted it with reconciling or**

**16   developing or doing anything for the declaratory**

**17   judgment action?**

**18   A.  I don't see anything else contained in the log.**

**19   Q.  I don't see anything at all except the note you**

**20   made about the OSHA report that said it's inadmissible**

**21   in any other litigation, right?**

**22    A.  Correct.   [A -120, Lambercht, adjuster,  page 90:13-22]**.

As of October 2010, Nationwide concluded that it needed no further information to make its decision to deny coverage and requested no additional information from Berry's Estate:

**17    Q. I'd like you to look at the last paragraph of my**
**18    letter to you.  Would you please read that last**
**19    paragraph into the record?**
**20    A. "I am available to you at your convenience to**
**21    discuss this matter, provide any additional information**
**22    you may need.  It is my understanding that there is no**
**23    further information that you require from me at this**
**24    time.  If this is incorrect, please call me and I will**

**1  do my best to provide it to you as soon as possible."**
**12    Q. Well, you're doing an investigation at this point**
**13    to the claim.  Supposedly you're looking both at**
**14    damages, liability, and even coverage.  Is that correct?**
**15    A. Correct.**
**16    Q. So you're being invited by plaintiff's lawyer to**
**17    say here's the information I promised you, let me know**
**18    if there's anything else you need, finish your job.  Is**
**19    that a normal and ordinary type of communication you**
**20    receive from plaintiff's lawyers?**
**21           MR. KASTER:  Objection.  You may**
**22      answer.**
**23           THE WITNESS:  Normally, no.**
**[A -119, Lambercht, adjuster, pages 84:8-13 84:20-23]**.

Instead Nationwide focused upon exclusion and accepted no facts contrary to its initial conclusion which it maintained throughout the claim:

**13    Q.  And I appreciate that.  So, again, you have**

14  all this documentation in front of you.  Is there a

15  single piece of documentation you would care to show

16  the Court, the jury, me, anything that shows we are

17  relying on this in terms of saying that James Berry was

18  an employee of Bodnar Masonry?

19    A.  No.  We are still in the middle of an

20  investigation here and we have not taken a final

21  coverage position.

[A - 95, Bottger Designee, lines 13-21]

2  Q.  And in terms of the Workers' Compensation

3  file, that, too, is referred to in Nationwide's most

4  recent Motion for Summary Judgment.

5       Outside of this document that I marked

6  Plaintiff's Exhibit number seven, is there any other

7  written documentation Nationwide has about the Workers'

8  Compensation file?

9    A.  I don't even know if I've got that.  Did you

10  get that out of our file.

[A - 95, Bottger Designee, lines 2-9]

                        135

20  Q.  Okay.  So this information comes in

21  October 4th, 2011, there's no claims notes that refer

22  to it?  Is that correct?

23    A.  Not that I saw.  Nothing, no.

24    Q.  Okay.  Was there any type of direction given

                        136

1  to develop the information any further?

2      A.  Not that I could see, no.

3      Q.  Was there any feedback by the claims manager

4  to Lance Jamison?

5      A.  Not that I saw -- well, at that time it

6  wouldn't have been Mike Diesarode.  It would have

7  been -- actually, I don't know who his manager would

8  have been.  We were in between managers, but no.

[A - 534, Bottger Designee, Pages 135:20 to 136:8]


                    150

1          The laws in Pennsylvania and the case law --

2  and I don't have it memorized off the top of my head --

3  but the evaluation we performed at least left it up to

4  question.  This was not a black and white situation

5  and, again, we were asking the judge at some point to

6  make a determination for us.

7      Q.  Where is the analysis that deals with the

8  case law of Pennsylvania on the definition of employee

9  in the claim file?

10     A.  It's just -- it may not be in the claim file.

11  I don't know.

[A - 533, Bottger Designee, lines 1-11]

160

13  But Nationwide's

14  Best Practices says that we should maintain --

15  Nationwide should maintain communication with those --

16  with similar insurers arising out of the same claim.

17      A.  You can't whitewash everything under the same

18  standards.  I mean, it's just like the -- something

19  about gathering documents.  We don't have to gather

20  every document.  We do what we think is necessary

21  during the course of our investigation.

22  Q.  And I appreciate that.

23      You had looked through the policy of

24  insurance, you went through the definition of employee,

161

1  leased worker, temporary worker, and that's the

2  information that you have.  In terms of when an

3  adjustor, or even someone with your expertise if it is

4  something that you don't -- you can't find in the

5  material that you have, what other types of reference

6  terms do the folks at Nationwide provide to you that

7  you can utilize?

8      A.  We don't have any types of claims manuals or

9  reference manuals so to speak.  It's just we each

10  gather our own things over the years and a lot of it is

11  just experience, and we know which questions to ask and

12  how to approach an evaluation.

[A - 542-543, Bottger Designee, lines 11-15]

This testimony, admissions by Nationwide's desigee and adjusters, clearly and convincingly proves that no investigation was conducted after the December 2010 denial.

Rather than viewing the above evidence offered by Bodnar in a light most favorable to him, the District Court considered Bodnar's evidence in piecemeal fashion, improperly weighed the credibility of Nationwide's position, and ignored evidence which a reasonable juror could conclude as a basis for finding Nationwide's unyielding pursuit of denial was bad faith.  Thus, the Plaintiffs were denied the benefit of all reasonable inferences in defending against summary judgment .

When plaintiffs can produce the kind of evidence that has been produced here, the law requires that their ultimate claims of bias be determined by a fact finder, not by a court.

**(C) The District Court erred in concluding Nationwide did not act in bad faith when the policy it sold had no definition of an employee exclusion and no reasonable method to define the exclusion**.

The District Court erred in concluding Nationwide did not commit  bad faith when it denied coverage based upon an employee exclusion not defined in the policy and for which it had no method to evaluate, adjust or conduct a good faith investigation.

Bodnar produced the following facts to prove Nationwide's bad faith:

●     The policy does not disclose that Nationwide knows the term employee is undefined and ambiguous. **[A- 96, Bottger, designee, lines:12-18].**

●     The policy does not disclose that Nationwide has known of this ambiguity but has nevertheless maintained the policy in its current form and nevertheless adjusted Bodnar's request for coverage with no reasonable methodology for doing so**. [A - 96, Bottger, designee, lines:14-18].**

●     The policy does not disclose that because Nationwide does not have its own definition of what an employee is, it relies upon the case law in the state which is then applied to the policy "...as best Nationwide can." By filing a lawsuit against its insured. **[A - 96, Bottger, designee, lines:14-18].**

●     Despite claiming it acted reasonably by conducting a common-law analysis to define "employee", Nationwide doesn't know where in the claim file the analysis of Pennsylvania case law on the definition of employee would be. In fact **the claim file shows no such analysis was ever considered or performed. [A - 99-100, Bottger, designee, lines::20-24 / 1000:1-11].**

This is evidence from which reasonably minded jurors might draw an inference of Bad Faith Claim Handling. ***Anderson v. Liberty Lobby, supra.***

In response to Bodnar's argument the Court stated:

> "**Nationwide, then, cannot be found in bad faith by operating under language to which Bodnar assented when he bought the policy. Moreover, in the absence of an explicit definition, there is nothing wrong with defining a term according to case law, as, indeed, this is the procedure that would be followed to determine the meaning of any undefined term.**" [A - 34 (Doc. 184)]

The Court's statement is in error as contrary to Pennsylvania law. It is bad faith for an insurance company to fail to define an exclusion it relies upon to deny coverage *Mohney v. American Gen. Life Ins. Co.*, 116 A.3d 1123, 2015 PA Super 113 (Pa.Super. 2015). **This violates Pennsylvania's Unfair Insurance Practices Act, 40 P.S. § 1171 (iii) "Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies."** Actions of an insurer which are violations of the Unfair Insurance Practices Act (UIPA) can be considered to be bad faith conduct under Section 8371; the Superior Court has held that the rules of statutory construction permit a trial court to consider..the alleged conduct constituting violations of the UIPA or the regulations in determining whether an Insurer, like Nationwide, acted in bad faith. *Romano v. Nationwide Mutual Fire Ins. Co.*, 435 Pa. Super. 545, 554-55 646 A.2d 1228, 1232 (1994).

Bodnar further argued to the Court that contrary to its own written training

36

materials **[SEALED APPENDIX, BODNAR 889-891 Nationwide Training Materials]** requiring policy definitions to fully explain terms and conditions, Nationwide attempted to enforce an exclusion when it had no definition of employee:

```
 4  Q.  The next bunch of questions I will ask you
 5  all reference materials that Nationwide has put forth
 6  as being part of either its Best Practices, training
 7  materials, commercial claims training materials, that
 8  type of thing.
                    212
 9  Q.  Do you agree that definitions contained
10  within a policy are supposed to help clarify policy
11  language?
12      A.  They should but it's the courts in the case
13  law in the various states then muddle the definitions.
14  Again, that's again why we pursued declaratory
15  judgment.
16      Q.  Do you agree the definition section of the
17  policy should fully define words and phrases used
18  throughout the policy?
19      A.  As much as it can subject to case law
20  interpretation.
```

**[A- 106 Bottger, designee]**

Nationwide knew it had no definition of employee in its policy, no methodology for analyzing the definition of employee in its best practices manual and knew that its definition of "temporary worker" was likewise ambiguous.

**This conduct violates Pennsylvania law:** An insurance company which violates its own written policies and procedures is evidence of bad faith claims

handling. See *Hollock*, 842 A.2d at 421 (evidence that insurer violated its own claims-handling procedures relevant to determination of insurer's bad faith), appeal granted by *Hollock v. Erie Ins. Exch.*, 878 A.2d 864 (Pa. 2005); see also *Galko v. Harleysville Pennland Ins. Co.*, 71 Pa. D. & C.4th 236 (Pa. Com. P1. 2005) (court determined that plaintiff met burden for bad faith under *Terletsky* by demonstrating that insurer disregarded its internal procedures).

The issue in this case is not whether Nationwide applied the same definition of employee during the claim as when it sold the policy, but rather the reasonableness of its conduct when it knew that it did not have a definition of employee. The absence of a reasonable standard violates the *Pennsylvania Unfair Insurance Practices Act 40 P.S. § 1171 (iii)* and renders the "coverage" illusory since there is nothing in the policy which places the insured on notice that the absence of a definition for the exclusion could result in a denial of coverage and forcing the insured to suffer the expense, uncertainty and delay of defending a declaratory judgment action to enforce an undefined exclusion.   Under Pennsylvania law, a promise that is wholly optional with the promisor is illusory and lacks consideration because the promisor has committed to nothing. *Geisinger Clinic v. Di Cuccio,* 414 Pa.Super. 85, 606 A.2d 509, 512 (Pa.Super.Ct.1992) . Thus, in any contract of insurance or indemnity, an insurer's ability to avoid performance after a risk becomes reality makes the promisor's covenant to indemnify the promisee against the risk illusory. *Geisinger*

38

*Clinic v. Di Cuccio*, supra. "Words of promise which by their terms make performance entirely optional with the 'promisor' whatever may happen, or whatever course of conduct in other respects he may pursue, do not constitute a promise." *Restatement of Contracts 2d*, Meaning of Terms, Sec. 2 comm. e. Rather, if the provisions of a contract are optional with the promisor, the contract is termed "illusory" and the promisee is not "justified in an expectation of performance." *Geisinger Clinic v. Di Cuccio*, supra.

Stephen Bodnar may not have bargained for the contractual  language in his insurance policy at the time it was purchased from Nationwide, however, he certainly had every reason to believe that Nationwide would conduct itself with the utmost good faith and fair dealing by providing him the benefit of the coverage he purchased without resorting to the filing of the Declaratory Judgment action because it knew that the exclusion was ambiguous and that it had no internal methodology for addressing that ambiguity.  Nationwide's actions left Stephen Bodnar facing two reservations of rights letters telling him that he may not have insurance, that all of his assets might be exposed and that he may wish to get his own counsel to protect himself.

This conduct is evidence from which reasonably minded jurors might draw an inference of Bad Faith Claim Handling.  *Geisinger Clinic v. Di Cuccio*, supra.

**(D)The District Court erred in making a factual conclusion that Nationwide did not act in bad faith by allowing and supervising a defense in the third party action which was adverse to Bodnar's interests**.

In opposing Nationwide's Motion for Summary Judgment, Plaintiffs did indeed complain that Nationwide allowed and supervised a defense in the third party action which was adverse to Bodnar's interests:

13    **Q.  Let me ask you this way:  When your insurance**

14    **company is saying here is your lawyer, he is going to**

15    **take care of you, you are filing a Workers'**

16    **Compensation defense, here is a lawsuit, we are saying**

17    **that we think the Workers' Compensation defense is your**

18    **only way out, we don't want to provide you any type of**

19    **coverage, that puts Bodnar in a clear situation where**

20    **he can be left between and betwixt with no coverage,**

21    **correct?**

22    **A.  Sometimes those things can't be avoided.**

23    **Q.  They can if you act with honesty, and**

24    **integrity, and you put yourself in your customer's**

**228**

1   **shoes, right?**

40

2     A.   Putting ourselves -- yes, we put ourselves in

3   our customer's shoes, but putting ourselves in our

4   customer's shoes does not mean paying every claim that

5   comes in the door.

[A - 108 -109, Bottger, designee].


17     Q.   That's not the question I asked you.  I asked

18   you that's filed of record for the Court, he is being

19   represented in that action, he has sworn that's what

20   James Berry is, the lawyer assigned by Nationwide to

21   represent him is proposing a Workers' Compensation

22   defense that is directly at odds with that, but,

23   curiously, is parallel to the position its taken in the

24   declaratory judgment action.  Don't you think that

                        230

1   Stephen Bodnar is in a precarious position?

2     A.   Yeah, yes, you can be in a precarious

3   position.

4     Q.   Can be?  You put him in that.

5     A.   We did not put him anywhere.

6     Q.   Sure you did.

7     A.   No, we did not.

41

**[A - 110 - 111, Bottger, designee]**.

It may have required three pages of questioning when Bottger was given no opportunity to retreat and was forced to acknowledge that its insured, Bodnar, was indeed in a precarious position because while his comp carrier had already denied liability in December of 2010, Nationwide was claiming the Workers' Comp Act as a defense in a declaratory judgment action seeking to deny coverage under his general liability policy which would in fact leave him bare of coverage. The Court in its opinion erroneously concludes:

> Indeed, insofar as Nationwide believed that Berry was actually an employee, a Workers' Compensation defense would be an appropriate means of defending its insured. If such a defense were successful, then it could defeat the tort claim. This would certainly be in Nationwide's interest, as it would not have to pay a claim. But it would just as certainly be in Bodnar's interest, as it would defeat any potential liability that he might have. The only one who could lose from this defense is Berry, insofar as she could be precluded from recovery in court but still be denied by the Workers' Compensation carrier.
>
> **[A - 37 - 38 (Doc. 184)]**

In fact, the one who would lose would be Bodnar since his compensation

carrier had already denied the claim, he would not have the coverage he paid for with Nationwide and, as established by defense counsel Saba, months after Nationwide's denial of coverage, all of his assets were in his name alone and completely exposed to the negligence and punitive damage claims brought by the Berry Estate. See, *Barber v. Pittsburgh Corning Corp., 521 Pa. 29, 35, 555 A.2d 766, 770 (1989)*. Here, rather than viewing the facts in a light most favorable to Bodnar, the Court does the opposite by impermissibly drawing inferences and making conclusions which are the fact finding role of a jury, which, if asked to consider these facts, could clearly decide such conduct on Nationwide's part was motivated by ill will and its own financial interests and thus constitute bad faith. See, *Anderson v. Liberty Lobby, Inc. supra.*

This was perhaps the most egregious breach by Nationwide: once suit had been filed against Bodnar, permitting assigned defense counsel to pursue a Worker's Compensation Defense when it knew Bodnar had already filed a verified answer on behalf of the co-defendant "Bodnarossa Campground" in which Berry is averred to be an independent contractor. **[A -166, DEFENSE COUNSEL INITIAL INTERVIEW]** This betrayal , bad in and of itself , was made worse still, since Nationwide knew Bodnar's comp carrier  had already denied coverage and that the pursuit of a workers comp defense was in Nationwide's best interest , and against

Bodnar's interest,  since this supported Nationwide's claim for relief to deny Bodnar coverage in the declaratory judgment action. Clearly a breach of Nationwide's "...duty to act with the utmost good faith towards its insured." *Hollock v. Erie Ins. Exchange*, 2004 PA Super 13, 842 A.2d 409, 416 (Pa. Super. 2004). Defense counsel's actions were supervised by Bottger, who knew that there was no reasonable basis to claim immunity under the Worker's Compensation Act as a defense **[A -529 - 531, Bottger, designee]**, but also knew that such a defense was inline directly with the position Nationwide had taken in the declaratory judgment action . **[A - 606-607, Bottger, designee, lines 17-25, 1-7].**

Clearly a reasonable juror could believe the admission made by Bottger and conclude Nationwide was acting directly in opposition to it's insured's best interests while seeking to protect it's own. "When the company voluntarily undertook the defense of [the insured] in pursuance of its privilege under the policy, it assumed a position of trust and confidence which called for the exercise of the utmost good faith, particularly in view of the possible conflict of interest between the insurer and the insured such as later developed. And... the contractual relationship under an indemnity policy was one requiring 'a high degree of good faith in the conduct of the indemnity company' ...." *Hollock v. Erie Ins. Exchange*, 2004 PA Super 13, 842 A.2d 409, 416 (Pa. Super. 2004).

**(E) The District Court erred in making a factual conclusion that Nationwide did not act in bad faith by it's unexplained and undocumented change from concluding Berry was a "temporary worker" to arguing he was an "employee"**

So the issue simply is: What was Nationwide's reasonable basis for deciding that Berry was an employee? Unfortunately, Nationwide's claim log provides no answer. **[A - 138 - 219]** Between August 23, 2010 and November 8, 2010 the only information independently gathered by Nationwide was the telephone statement of Stephen Bodnar October 25, 2010 in which he stated:

> "Bodnar did not consider the decedent James Berry an
>
> employee of Bodnar Masonry at the time of the accident."

**[A - 183, Nationwide's claims log, NW-BOD 46]**

Nationwide could articulate no good faith basis for "arguing" James Berry was an employee at the time that it denied Berry's claim on November 8, 2010 and then engaged in pointless litigation until it decided to pay its policy limits in July 2012. Instead, after taking Bodnar's statement and confirming that it needed no further information from either Bodnar or the Berry Estate, having all of the information necessary to make a decision Nationwide's claims committee came to a consensus

45

that Berry met the definition of "temporary worker" on November 4, 2010 **[A - 180 NW-BOD 45].** What happens next is truly unreasonable: without further information, or request for any further investigation, Nationwide's claims committee does an about-face on November 8, 2010 and now decides there is a "reasonable basis to argue that Barry was an employee" and a declaratory judgment action should be filed. **[A - 179, NW-BOD 45].** The facts in this matter, from Nationwide's own claims file, clearly and convincingly prove that Nationwide had no basis to make this decision, let alone a reasonable basis.

Rather than viewing these compelling facts in a light most favorable to Bodnar, the Court in granting Defendant's Motion for Summary Judgment erroneously permitted Defendant to argue for its benefit the advice of its in-house counsel, Cheryl Kovaly, despite the fact that the Defendant had consistently represented to the Court and Plaintiffs' counsel that it would not rely upon the advice of counsel defense:

> "**Nationwide argues that it only made this decision on advice of its counsel, Cheryl Kovaly**. Indeed, the claims file reflects certain discussions with counsel at this time. (See p. 12, *supra.*) However, those discussions are redacted, which means that the Court cannot judge whether they by themselves provided a reasonable basis for Nationwide to conclude that Berry was in fact an employee. While being able to read Kovaly's advice would

certainly clarify this matter, the Court cannot find that the redaction affects its summary judgment decision. For one reason, whatever Kovaly's advice was, it only led to a determination to file a declaratory judgment action, not to deny coverage."  **[A - 31-32 (Doc. 184)]**

This conclusion is erroneous on two grounds:    First, it is completely unsupported by the record and, secondly, is a clear violation of the Court's obligation to view the facts in the light most favorable to the Plaintiff and to draw all reasonable inferences from those facts in Plaintiffs' favor by instead impermissibly engaging in improper weighing of the evidence and making a conclusion for which there is no support.

The court further exacerbates its error in granting credence to this argument by criticizing Plaintiffs as follows:

"Moreover, it is significant that the Plaintiff never moved to compel disclosure of Kovaly's advice and never argued that summary judgment should be denied because the advice was not disclosed." **[A - 32 (Doc. 184)]**

This conclusion is clearly and convincingly shown to be erroneous since Plaintiffs had, in fact, moved to compel production of the "legal file" maintained by Defendant (Doc. 40) and advanced three arguments in support of the file.

**What the record before the Court actually shows is in fact that Plaintiff**

**did Move to Compel and the Court actually ruled upon the request holding it in**

**abayance depending upon Nationwide's proffered defense.**

During oral argument on the disclosure of the "legal file", and indeed in its

brief of opposition, Nationwide steadfastly maintained the privileged status of this

file AND agreed to the consequences of this tactical decision:

> "However, as the Pennsylvania Supreme Court has explained, the
> consequence of Defendant maintaining the privilege is that it is
> deprived of the ability to defend the bad faith claim by asserting that
> it acted reasonably upon advice given by counsel ...   Accordingly,
> the remedy to Plaintiffs' for Defendant's assertion of the
> attorney/client privilege in this bad faith lawsuit is not the
> evisceration of the privileged communication as part of its defense
> at trial."(Doc. 42:13)

At no time during the depositions of Nationwide's designee, Bottger, or its

claims handlers, Jamison or Lambrecht, did they attempt to "... put legal advice at

issue as an element of their case ..."

It is obvious from the Court's conclusion in its opinion concerning Kovali's

participation, and Plaintiffs' failure to compel disclosure of Kovali's advice form the

basis of the Court drawing a factual inference that the advice "only lead to a

determination to file a declaratory judgment action, not to deny coverage." This is

more than impermissibly weighing of the evidence and the drawing of inferences

from the facts; it is a wholesale creation of a fact unsupported by the record. It is the product of drawing inferences in favor of Nationwide's arguments thereby usurping the function of a jury where these facts are in dispute.

Again, it appears that the Court is giving Nationwide great deference, making a conclusion in its favor and drawing all reasonable inferences in support of Nationwide's impermissible argument of pointing toward Kovaly's advice as an explanation for its change in direction and conclusion between November 4th and November 8th, 2010. The Court clearly misapprehends the fact that there is no other explanation contained in the claim file for this change. Further, the Court makes a conclusion unsupported by the record by inferring that the only advice that Kovaly might have given would be to file a Declaratory Judgment action. The simple truth of the matter is that the importance of this turn of events is that Nationwide's own claims file clearly and convincingly establishes that it has no basis, let alone a reasonable basis for making a conclusion that it could argue that Berry was an employee. An insurance company arguing, in the absence of un-controverted facts, that an exclusion should be applied is certainly a fact upon which a reasonable jury could find bad faith.

These are facts which could easily be believed by a jury and serve as the basis for a conclusion that Nationwide acted in bad faith. See ***Brown v. Progressive Ins.***

*Co.*, 860 A.2d 493, 501 (Pa. Super. Ct. 2004) (citations omitted) (noting bad faith conduct includes a lack of good faith investigation into facts); ***Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.***, 193 F.3d 742, 751, n.9 (3d Cir. 1999) (concluding bad faith is failure to pay without reasonable investigation of all available information) (citing ***Coyne v. Allstate Ins. Co.***, 771 F. Supp. 673, 678 (E.D. Pa. 1991)); ***Hollock v. Erie Ins. Exch.***, 54 Pa. D. & C. 4th 449 (Pa. Com. Pl. 2004) (Bad faith conduct by an insurer may include, inter alia, ... inadequate investigation ...).

This Court should reverse the grant of summary judgment based upon the erroneous application of the law and the drawing of conclusions unsupported by the factual record in order to prevent the manifest injustice of denying Appellants the opportunity to have these issues resolved by a fact finding jury.

## CONCLUSION

The district court's decision in granting Summary Judgment in this case is riddled with a continuing legal error in which the Standard for Summary Judgment is ignored at best and reversed in application at worst. The record before this Court clearly demonstrates that many factual issues have been sufficiently raised by Appellants, which, a reasonable jury could easily find believable and support a finding of bad faith by Nationwide. This Court should rule, as a matter of law, that an insurer that tries a case and achieves a compensatory verdict within the policy limits cannot be liable for bad faith under 42 Pa. C.S.A. § 8371, even if the insured suffers a punitive damage award that is not covered by the policy. Accordingly, this Court should reverse the judgment in this case and remand this case for a jury trial to allow a decision on the merits.

Respectfully submitted,

*/s/ MICHAEL R. MEY*
MICHAEL R. MEY
*Attorney for Appellants*

## COMBINED CERTIFICATIONS

**CERTIFICATE OF ADMISSION TO THE BAR**

MICHAEL R. MEY certifies as follows:

1. I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

2. Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Date: May 2, 2016

*/s/ MICHAEL R. MEY*

MICHAEL R. MEY

**CERTIFICATE OF COMPLIANCE**

**WITH FED. R. APP. P. 32 AND 3D CIR. LAR 32.1(c)**

MICHAEL R. MEY certifies as follows:

1. This brief complies with the page limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 10,663 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Wordperfect X 6 in 14-point Times New Roman font.

3. Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Date: May 2, 2016

*/s/ MICHAEL R. MEY*

MICHAEL R. MEY

**CERTIFICATE OF IDENTICAL COMPLIANCE OF BRIEFS**

MICHAEL R. MEY certifies as follows:

1. The text of the electronic and hard copy forms of this brief are identical.

2. Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Date: May 2, 2016

*/s/ MICHAEL R. MEY*

MICHAEL R. MEY


**CERTIFICATE OF VIRUS CHECK**

MICHAEL R. MEY certifies as follows:

1. I caused the electronic version of this brief to be checked for computer viruses using Microsoft Security Essentials. No computer virus was found.

2. Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Date: May 2, 2016

*/s/ MICHAEL R. MEY*

MICHAEL R. MEY

**CERTIFICATE OF SERVICE**

I hereby certify that, on Date: May 2, 2016, two copies of the foregoing

Opening Brief of Appellant AmerUs Life Insurance Company, bound with Volume I of the Appendix, and one copy of Volumes II & III of the  Appendix were sent by email and First Class Mail via the United States Post Office to:

Charles E. Haddick, Jr., Esq. and Byron Kaster, Esq.

Plaza 21, Suite 302

425 North 21st Street

Camp Hill, PA 17011-2223

On the same date, an electronic copy of the Opening Brief of Appellant was

electronically transmitted to the Clerk of the United States Court of Appeals for the Third Circuit.

An additional ten copies of the Opening Brief of Appellant, bound with

Volume I of the Appendix, and four copies of Volumes II-III of the Joint

Appendix were sent by Federal Express overnight delivery to:

Office of the Clerk

United States Court of Appeals for the Third Circuit

21400 U.S. Courthouse

601 Market Street

Philadelphia, Pennsylvania 19106-1790

*/s/ MICHAEL R. MEY*

MICHAEL R. MEY